NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Leah.Bolstad@usdoj.gov
**NICOLE M. BOCKELMAN, OSB #105934**
Nicole.Bockelman@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:21-cr-00075-IM |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNT 1** |
| **DANIEL MATTHEW KITTSON,** | |
| **Defendant.** | |

Defendant Daniel Kittson is charged with Possession and Transfer of a Machinegun, in violation of Title 18, United States Code, Section 922(o) (Count 1), and Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g) (Count 2). Relying on *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), defendant moves to dismiss Count 1 because he contends the government may not restrict his Second Amendment right to possess a machinegun.[1]

---

[1] Defendant describes the statute as prohibiting "automatic firearms." But Section 922(o) is specific to machineguns. Defendant does not explain the basis for his broad reading of the

**Government's Response to Def. Mot. to Dismiss Ct. 1**                                                    Page 1

Defendant's argument lacks merit. The regulation of machineguns falls outside the Second Amendment's ambit and is consistent with historical tradition. Well-settled case law establishes that "dangerous and unusual" weapons not in common use by law-abiding citizens do not receive Second Amendment protection. *Bruen* did not alter that precedent. This Court should deny defendant's motion.

I.   BACKGROUND

In early January 2020, an ATF undercover agent ("UC") learned defendant Daniel Kittson was trying to sell a machinegun. The ATF UC contacted defendant and discussed a possible deal. During recorded calls preceding the transaction, defendant described the sale item as a "Russian PPSh" that is "fully automatic." Defendant explained how the weapon will "spit like 1200 to 1400 rounds a minute." Defendant told the UC how there is a switch "right in front of the trigger," and when you hit the switch with your finger, "it goes from single shot to full auto." On January 10, 2020, defendant directed the UC to a residence where defendant was storing the weapon. They met with defendant's partner "R.B." and together, the three men discussed the weapon for sale. At defendant's direction, the UC handed the $8,000 payment to R.B. in exchange for the weapon.

II.  COUNT 1 DOES NOT VIOLATE THE SECOND AMENDMENT

A.   Legal Standard

The Second Amendment protects an individual's right to keep and bear arms. U.S. Const. Amend II. The scope of that right is determined by its plain text, as informed by history. *Bruen*,

---

statute. *See e.g.* David Grove, *5 key differences between a machine gun and an automatic rifle*, Business Insider (May 10, 2018), available at: https://www.businessinsider.com/differences-between-a-machine-gun-and-an-automatic-rifle-2018-5 (last accessed July 12, 2023).

**Government's Response to Def. Mot. to Dismiss Ct. 1**                                                **Page 2**

142 S. Ct. at 2127. For example, it protects the right of law-abiding citizens to carry firearms for self-defense inside and outside the home. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *Bruen*, 142 S. Ct. at 2126. But it is not an unlimited right. *Heller*, 554 U.S. at 627. It does not allow every person "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Bruen*, 142 S. Ct. at 1228 (citing *Heller*, 554 U.S. at 627). And a law that infringes on protected conduct is still constitutional where it "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

*Bruen* adopted a two-part test to determine the constitutionality of a firearm regulation. *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023). First is a textual analysis. *Id*. This requires assessing whether the defendant is among "the people" protected by the Second Amendment, whether the weapon is "in common use today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment. *Id*. If the textual analysis is satisfied, the next step requires assessing whether the regulation is consistent with the Nation's historical tradition of firearm regulation. *Id*. Step two looks to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. The historical tradition need not be a "twin" but must be "relevantly similar." *Id*. (internal punctuation omitted).

  **B.** **Section 922(o)'s Prohibition on the Possession of Machineguns is Constitutional.**

    **1.** **Possession of Machineguns Is Not Protected Under the Plain Text of the Second Amendment.**

Section 922(o) bans the transfer or possession of a machinegun. It carves out exceptions for (1) the transfer to, or possession by, a person acting under authority of the United States, or

(2) any lawful transfer or possession of a machinegun that was lawfully possessed before the statute's enactment.

Possession of machineguns, as a course of conduct, falls outside the scope of the Second Amendment. In *United States v. Miller*, 307 U.S. 174, 178 (1939), the Supreme Court held that certain types of firearms can fall outside the scope of the right to bear arms. It considered a law that proscribed the transportation of unregistered short-barrel shotguns. Because short-barreled shotguns were not of the type typically possessed by law-abiding citizens for lawful purposes, that type of weapon was not covered by the Second Amendment. *Heller*, 554 U.S. at 622-25 (interpreting *Miller*).

*Heller* affirmed the *Miller* concept that the Second Amendment protects only the type of weapons that were "in common use at the time." *Id*. at 627. It pointed to the historical tradition of prohibiting the carrying of "dangerous and unusual weapons" to support this conclusion. *Id.*

Nothing in *Bruen* disturbed *Miller* or *Heller*. To the contrary, the majority in *Bruen* stated that its holding was "in keeping with *Heller*." *Bruen*, 142 S. Ct. at 2126. Justice Kavanaugh, joined by Chief Justice Roberts, reiterated that prohibitions on "the carrying of dangerous and unusual weapons" remains an "important limitation" on the right to keep and bear arms. *Id*. at 2162 (Kavanaugh, J., concurring). And Justice Alito concurred that *Bruen* does not "decide anything about the kinds of weapons that people may possess." *Id*. at 2157 (J. Alito, concurring).

Relying on *Heller*, the Ninth Circuit has held the right to bear arms does not extend to the possession of machine guns. *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012). Machine guns are "dangerous and unusual weapons" that are not "typically possessed by law-abiding citizens for lawful purposes." *Id.* at 640. Defendant takes issue with *Henry's* dangerousness discussion. ECF No. 43 at 6. But he misconstrues it. The Ninth Circuit did not employ means-end scrutiny to

**Government's Response to Def. Mot. to Dismiss Ct. 1**                                                                 **Page 4**

assess societal interests, *Bruen*, 142 S. Ct. at 2129, it conducted a historical inquiry into the types of weapons not typically possessed by law-abiding citizens for law-abiding purposes—those that were "dangerous and unusual"—as both *Heller* and *Bruen* instruct.

Other courts have relied on *Heller* to reject Second Amendment challenges to laws proscribing machine gun possession. *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-44 (3rd Cir. 2016) (finding "the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *Hollis v. Lynch*, 827 F.3d 436, 449-51 (5th Cir. 2016) (finding that machineguns do not receive Second Amendment protection because they are dangerous and unusual); *Hamblen v. United States*, 591 F.3d 471, 473-74 (6th Cir. 2009) (finding the right to keep and bear arms does not authorize an unlicensed individual to possess unregistered machine guns for personal use); *United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008) (finding machineguns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit).

Defendant relies on *Bruen*, but he misreads it. He says under *Bruen*, the inquiry is simply "is an automatic rifle an arm?" ECF No. 43 at 5. If it is, defendant says, it falls within the scope of the Second Amendment. But that simplistic view contravenes *Bruen's* own limited interpretation of the Second Amendment: it affords law-abiding citizens the right to bear *commonly used* arms *for self-defense*. Bruen, 142 S. Ct. 2143. He cites evidence that shows that "handguns may be the most dangerous" type of gun and that "automatic firearms" are "bearable." ECF No. 43 at 2, 3; ECF No. 43-1, 43-2. That is irrelevant. Moreover, it advances the very means-end inquiry that *Bruen* rejected. Defendant cites no statistic showing that machineguns are commonly used by law-abiding citizens for self-defense.

Defendant's motion should be denied because the plain text of the Second Amendment does not protect the possession or transfer of machine guns.

### 2. Prohibiting the Possession of Machineguns Is Consistent with the Nation's Historical Tradition of Firearm Regulation.

Even if this Court were to conclude that the Second Amendment's plain text protects the possession of machineguns, Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2129–30.

Modern regulation of machine gun possession imposes a comparable burden on the right to bear arms as the historical burden against the possession of dangerous and unusual weapons. *Heller* explained—and *Bruen* did not disturb—that this nation's "historical tradition" includes "prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 637.[2] For example, "the offence of riding or going armed, with dangerous or unusual weapons, [was] a crime" at English common law. 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769). In the United States, too, courts long ago acknowledged that a man commits "an offence at

---

[2] In support of this conclusion, *Heller* cited *Miller*, 307 U.S. at 179; 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769); B. Wilson, Works of the Honourable James Wilson 79 (1804); J. Dunlap, The New–York Justice 8 (1815); C. Humphreys, A Compendium of the Common Law in Force in Kentucky 482 (1822); 1 W. Russell, A Treatise on Crimes and Indictable Misdemeanors 271–272 (1831); H. Stephen, Summary of the Criminal Law 48 (1840); E. Lewis, An Abridgment of the Criminal Law of the United States 64 (1847); F. Wharton, A Treatise on the Criminal Law of the United States 726 (1852). *See also State v. Langford*, 10 N.C. 381, 383–384 (1824) (defendants who entered home with firearms and shot a dog was a breach of peace and not merely civil trespass); *O'Neill v. State*, 16 Ala. 65, 67 (1849) (quarrelsome words in a public place alone does not constitute an offense, but quarrelsome words while armed is); *English v. State*, 35 Tex. 473, 476 (1871) (prohibition of carrying pistols, dirks and certain other deadly weapons does not violate the Second Amendment); *State v. Lanier*, 71 N.C. 288, 289 (1874) (going armed with dangerous or unusual weapons is a crime against the public peace).

common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (NC 1824). For that reason, the Second Amendment encompasses only arms "of the kind in common use" at the time of its enactment—which does not include "dangerous and unusual weapons." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179).

*Bruen* did not change this aspect of *Heller*. Instead, *Bruen* reaffirmed *Heller's* finding there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148-149: *Miller*, 307 U.S. at 179).

Defendant's method of analysis—pointing out that Section 922(o) was passed nearly 200 years after the Second Amendment, ECF No. 43 at 7—has no merit. It matters not when the law was passed; it matters that the law, whenever it was passed, proscribes conduct that was similarly proscribed at the time of the Second Amendment. Prohibiting machine gun possession is part and parcel of our Nation's historical tradition of regulating dangerous and unusual firearms. "Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns." *Henry*, 688 F.3d at 640.

Post-*Bruen*, courts have consistently held that Second Amendment protections do not extend to machineguns. *See Cox v. United States*, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023) (rejecting argument that machine guns are in common use for self-defense); *United States v. Kazmende*, 2023 WL 3872209, at *2-44 (N.D. Ga. May 17, 2023), report and recommendation adopted, 2023 WL 3867792 (N.D. Ga. June 7, 2023) (*Bruen* does not require finding that machine gun possession is protected); *United States v. Dixon*, 2023 WL 2664076, at *3 (N.D. Ill. Mar. 28, 2023) ("Thus, *Miller*, *Heller*, and *Bruen* foreclose any challenge to the federal

machinegun ban. The Second Amendment simply does not extend to 'dangerous and unusual weapons.'"); *United States v. Simien*, ––– F. Supp. 3d –––, 2023 WL 1980487, at *8–9 (W.D. Tex. Feb. 10, 2023) (finding that machineguns are within the category of "dangerous and unusual" weapons that do not receive Second Amendment protection); *United States v. Hoover*, 2022 WL 10524008, at *13 (M.D. Fla. Oct. 18, 2022) (finding nothing in *Bruen* that "would undermine" the line of authority holding that the Second Amendment does not protect machineguns); *see also United States v. Holton*, ––– F. Supp. 3d –––, 2022 WL 16701935, at *3 (N.D. Tex. Nov. 3, 2022) (holding that section 5861(d) does not regulate protected conduct under the Second Amendment).

Defendant's motion should be denied because prohibiting the possession of machine guns is consistent with this Nation's historical tradition of firearm regulation.

### III.  CONCLUSION

Defendant's argument that the plain text and history protects possession of machine guns because machine guns are "arms" and section 922(o) is of recent "vintage" ignores the clear weight of authority. *Miller*, *Heller*, *Bruen*, and *Henry* foreclose any challenge to the proscription of machinegun possession. Defendant's motion should be denied.

Dated: July 12, 2023.                               Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #052039
NICOLE M. BOCKELMAN, OSB #105934
Assistant United States Attorneys