**Michael Charles Benson**
**Assistant Federal Public Defender**
michael_benson@fd.org
**C. Renée Manes**
**Assistant Federal Public Defender**
renee_manes@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
Tel:    (503) 326-2123
Fax:    (503) 326-5524

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:21-cr-00075-IM |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| **DANIEL MATTHEW KITTSON,** | |
| Defendant. | |

Daniel Kittson will appear for sentencing on December 4, 2023 following a trial. Mr. Kittson agrees with the Pre-Sentence Investigation Report (PSR) that his base offense level is 18 and that his criminal history category is I. Mr. Kittson has unresolved objections to the PSR. He believes he should receive two level reductions for being a zero point offender, and for acceptance of responsibility. He also believes the PSR should not include certain unrelated conduct. Mr. Kittson believes that a sentence of time-served is appropriate in this case.

PAGE 1   DEFENDANT'S SENTENCING MEMORANDUM

I.      **Introduction**

For twenty years following his release from prison, Daniel Kittson made good on his promise to himself to never go back. Despite having served a lengthy sentence, Mr. Kittson was self-sufficient. He was employed, owned his own home, and had no parole violations. PSR ¶ 44. He lived and worked in the Salem area where he had been most of his life. PSR ¶¶ 54-56. He had close friends and contact within his community. He had put his past behind him and started a new life.

In 2019 Mr. Kittson lost employment. The combination of the pandemic and his advancing age made it difficult for him to obtain a new position. His finances were strained, he was unable to make mortgage payments and was in danger of losing his home. ECF 126, Trial Transcript at 308-09, 537 (hereinafter cited as Tr.). During this stressful period, Mr. Kittson began regularly using opiates.

Mr. Kittson's financial difficulties were well known among his friends and acquaintances who included Nikki, the confidential informant in this case who had her own pending legal problems. *Id*. In January of 2020 Nikki sent Special Agent Daniel Weber a picture of a submachine gun and a phone number. Tr. 237-38. Nikki never testified at trial. The phone number belonged to Mr. Kittson. Tr. 238.

The jury found that Mr. Kittson aided Ray Bohanan in negotiating a transaction for the firearm with Agent Weber and helping him drive to the buy location, but that he did not possess the firearm physically or constructively. This verdict was consistent with the weight of the evidence. Mr. Bohanan physically possessed the firearm when it was sold. Tr. 346. It was sold from a location that Mr. Bohanan, but not Mr. Kittson, had access to. Tr. 460. Even though Agent Weber continued to contact Mr. Kittson multiple times over several months after the transaction,

Mr. Kittson was unable to negotiate any further transactions following the death of Mr. Bohanan. Tr. 378.

Effectively, Mr. Bohanan wanted to sell the firearm with a non-operable magazine for as much money as possible and used Mr. Kittson to insulate himself from the transaction. Mr. Bohanan was a paranoid survivalist with a cache of weapons. Mr. Kittson's substance abuse, and desperate financial condition, made him ideal for this role. His financial desperation and substance abuse clouded his judgment.

Mr. Kittson has shown the ability to be self-sufficient and law-abiding when his substance abuse is treated. He would benefit from substance abuse treatment upon release. If he is able to manage his addiction, he should be able to return to employment and stability.

A lengthy sentence of incarceration is not necessary in this case. In this case, the Court should impose a sentence of time served rather than a specific number of months. As explained below Mr. Kittson's advisory sentencing range under the guidelines includes a sentence as low as fifteen months. Mr. Kittson has been in custody since September 27, 2022. PSR ¶ 9. Because Mr. Kittson has not been sentenced on any other matter, he should be entitled to credit for the entire period he has been in official detention, including the period he was in the custody of Crook County as a matter of law under 18 U.S.C. § 3585(b)(2).[1] Even if this Court finds no reason to vary the sentence below the guidelines, once good time credit is considered, Mr. Kittson should already have served his entire sentence by the date of sentencing. In this case, there are more than adequate reasons to vary downward under 18 § U.S.C. 3353(a) because of Mr. Kittson's advanced

---

[1] While a portion of that time was in Crook County, 18 U.S.C. 3585(b)(2) grants credit for any period spent in official detention "as a result of any other charge for which the defendant was arrested after the commission of the offense" so long as it "has not *been* credited against another sentence." (emphasis added). Mr. Kittson's time in Crook County falls within this statute.

**PAGE 3   DEFENDANT'S SENTENCING MEMORANDUM**

age, treatable substance abuse issues, and because this offense only involved aiding and abetting a transfer rather than possession.

## II.     Mr. Kittson's Adjusted Offense Level should be 14

### A.     Mr. Kittson has no criminal history points.

The PSR incorrectly calculated Mr. Kittson's criminal history. The PSR assigns Mr. Kittson one point of criminal history for his 2009 charge of DUI. PSR ¶ 45. This conviction should receive no criminal history points under the applicable law. Mr. Kittson objected to this provision of the PSR. Therefore, it is incumbent upon the government to come forward with evidence establishing that allotting this point is appropriate. *See, e.g., United States v. Ameline*, 409 F.3d 1073, 1085 (9th Cir. 2005) (en banc) (citing *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990)).

Mr. Kittson successfully completed a diversionary program following the charge. PSR ¶ 45. Under USSG § 4A1.2(f) a diversionary disposition that is the result of an "admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding is counted. . ." *But see* USSG § 4A1.2(j) ("Sentences for expunged convictions are not counted . . ."). Under Oregon Law, no admission of guilt or plea of *nolo contendere* in court is required for a diversionary disposition in a DUI.

The relevant Oregon Law is O.R.S. § 813.230(1)(a), which instructs that a court "shall" accept the plea that that is "filed as part of the petition for a diversion agreement . . ." The petition is a written document and its contents are defined in O.R.S. § 813.200(4). The petition may not be used as an admission if the court denies the petition. O.R.S. § 813.230(4). Thus, Oregon Law does not require an admission "in a judicial proceeding." The application note clarifies that an admission in a judicial proceeding means an admission made in "open court." *See* USSG § 4A1.2 Application

Note 9 (referring to an "admission of guilt in open court."). Instead, the court simply accepts the submitted petition, which does not need to be signed in court.

The docket entry included in the amended PSR does not establish that an admission was taken in open court. It only establishes that the court held a hearing referred to as a "change of plea" hearing on March 16, 2010. During that hearing the court accepted the signed petition. Oregon Law did not require the court to take an admission from Mr. Kittson in open court. Even if he entered such an admission, it was not the operative admission for the purposes of the diversionary program and had no legal impact. Mr. Kittson's dismissed Oregon DUI charge should not count. Even if the Court does find that Mr. Kittson's diversionary disposition should count, Oregon law which includes an actual dismissal of the DUI should be considered more analogous to an expunged conviction under USSG § 4A1.2(j) than a diversionary disposition. With no criminal history points, Mr. Kittson's criminal history category is I.

**B.    Mr. Kittson's base offense level is eighteen and he should receive a two-level adjustment for being a zero point offender.**

The PSR correctly calculates Mr. Kittson's base offense level as 18 under USSG § 2K2.1(a)(5). Because Mr. Kittson receives no criminal history points he should receive a two level reduction under USSG § 4C1.1. The government may argue that Mr. Kittson is excluded from credit under USSG § 4C1.1(a)(7). But, under that section only Mr. Kittson's conduct and not Mr. Bohanan's matters.

The guidelines calculation for aiding and abetting is explained under USSG § 2X2.1. Under USSG § 2X2.1, the offense level in chapter 2 for an aider and abettor is the same as for the underlying offense. But, the zero point offender reduction is not a calculation of offense level, but a reduction for individuals without any criminal history points. *See*, *United States v. Hendrick*, 177

**PAGE 5    DEFENDANT'S SENTENCING MEMORANDUM**

F.3d 547, 551 (6th Cir. 1999) (explaining that the criminal history category of the instant defendant rather than the principal applied). Therefore "the defendant" as referenced in USSG § 4C1.1 means the defendant's *own* conduct. Mr. Kittson did not "transfer" the firearm because it was not his to transfer, nor did he "induce" anyone else to transfer the firearm. Mr. Kittson's criminal offense level should be reduced by a further two levels.

> C. **Mr. Kittson should receive a downward adjustment of two levels for acceptance of responsibility.**

After learning charges had been filed more than a year after the transaction, Mr. Kittson contacted the Federal Public Defender for the District of Oregon and voluntarily surrendered on the warrant on May 28, 2021. *See* ECF 6 (recording his initial appearance); ECF 9 (arrest warrant served by the United States Marshal Service in lockup); USSG § 3E1.1 Application Note 1 (discussing timely surrender). Before Mr. Kittson's self-surrender, he was never questioned by law enforcement. The case against him consisted almost entirely of his own recorded statements to Agent Weber who was working undercover. At trial there was no dispute regarding the accuracy of the recordings, and most of the facts in the case were uncontested.

However, Mr. Kittson was charged with possessing the machinegun in this case, which he never did. He needed to go to trial to establish that. He was also charged with aiding and abetting a transfer of the machinegun in this case. There was never any meaningful dispute about the essential actions Mr. Kittson undertook. Mr. Kittson's primary defense was that "transfer" did not include a transfer to a government agent. ECF 112. Mr. Kittson also suggested that Mr. Bohanan may not have known the firearm functioned. Mr. Kittson did not testify as part of this case and has never been accused of making any false statements to law enforcement about the charges.

PAGE 6   DEFENDANT'S SENTENCING MEMORANDUM

Under USSG § 3E1.1 Application Note 2, the guidelines specifically contemplate that a defendant may go to trial and still receive credit "to assert and preserve issues that do not related to factual guilt" such as constitutional issues or the legal application of the statute to his or her conduct. That is exactly what Mr. Kittson did. Mr. Kittson's acceptance of responsibility should be based on factors such as whether he showed dishonesty or lack of remorse rather than whether the Court agreed with counsel's legal position. *United States v. Wright*, 117 F.3d 1265, 1277 (11th Cir. 1997). Mr. Kittson's offense level should be reduced a further two levels for acceptance of responsibility.

### D. Mr. Kittson's advisory guideline range and good time analysis support a sentence of time served in this case.

Mr. Kittson's correct offense level should be calculated as follows:

- Base Offense Level                18
  - Zero Point Offender             -2
  - Acceptance of Responsibility    -2
- Final Offense Level               14

Because Mr. Kittson's criminal history category is I, his guideline range is between 15 and 21 months. According to the Good Time Chart provided as Exhibit A, an individual sentenced to 15 months in the custody of the Bureau of Prisons who obtains all available good time will actually serve no more than 13 months and 2 days, or 397 days, in custody, although they will be entitled to have some portion of that period in transitionary housing, such as at a halfway house. An individual sentenced to 21 months in custody who obtains all available good time will actually serve 18 months and 9 days, or 556 days in custody, but again will be entitled to some period in transitionary housing.

**PAGE 7   DEFENDANT'S SENTENCING MEMORANDUM**

While the applicable statute, 18 U.S.C. § 3624(c)(1) provides that transitionary housing may be up to one year, typically individuals usually receive between 3 to 6 months. Thus, a sentence of 15 months would result in a period of between 7-10 months in a detention facility and another 6-3 months, respectively, in transitionary housing. A sentence of 21 months would result in a period of between 12-15 months in a detention facility and another 6-3 months, respectively, in transitionary housing.

Mr. Kittson has already served 14 months and 8 days in detention.

### III. Mr. Kittson objects to the inclusion of information that is not "relevant conduct" in the PSR.

The PSR includes conduct that is not "relevant conduct" for purposes of sentencing as part of the "offense conduct." PSR ¶ 22. In particular the PSR alleges that Mr. Kittson discussed uncharged criminal activity roughly seven months after the offense in this case. Pursuant to USSG ¶ 1B1.3 relevant conduct includes conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection of responsibility for that offense." The conduct described in PSR ¶ 22 did not occur during the offense, and was entirely unrelated to preparing for that offense or avoiding detection for that offense. It should not be included.

### IV. Conclusion

Mr. Kittson is a sixty-one-year-old man who, after a twenty year period of law-abiding conduct, developed substance abuse issues and got into dire financial straits. He then made the foolish and indefensible decision to try to fix them by acting as a middleman in an illegal gun transaction. Mr. Kittson's conduct in this case is simply not the same as the principal defendant's. *See Alfred v. Garland*, 64 F.4th 1025, 1034 (9th Cir. 2023) (acknowledging that the distinction

between an accomplice and principal "properly plays a role at sentencing.") (citing *United States v. Smith*, 891 F.2d 703, 714 (9th Cir. 1989)).

Ray Bohanan possessed a significant number of firearms, including multiple machine guns, when he could not legally possess any gun. Ray Bohanan took great care to try to ensure that he could never be directly contacted or found by Agent Weber. Ray Bohanan never gave Agent Weber his full name or his phone number; he utilized the home of another person, Ms. Tina Schneider, as the location of the sale; and, he told Agent Weber that all contact would have to go through Mr. Kittson.

The government's case—which the jury rejected—was based primarily on Mr. Kittson pretending in recorded conversations to be a "big shot." Mr. Kittson's actual actions, including his frankly pathetic attempt to sell Agent Weber a used pickup truck out of his back yard show that he was anything but. Mr. Kittson demonstrated conclusively that he was no arms dealer, from his inability to acquire other weapons to sell without Mr. Bohanan, and through his clear ineptitude as demonstrated by his having Agent Weber pick him up from his home. Mr. Kittson could not even get to the buy location without a ride from Agent Weber. Mr. Kittson was a useful fool for Mr. Bohanan. Mr. Kittson's poor judgment and desperation led him to serious criminal charges.

There is every reason to believe that once released from prison, monitored by probation and while receiving drug treatment and urinalysis testing, Mr. Kittson will again show that he is capable of law-abiding self-sufficiency. A lengthy period of incarceration is simply not necessary—or even suggested by the guidelines--for Mr. Kittson's conduct or to punish Mr. Kittson given his age. Mr. Kittson has been in custody over 14 months, which is a more than

sufficient period of time based on the Advisory Guideline Range and the factors set forth in 18 U.S.C. § 3553(a). This Court should sentence Mr. Kittson to a period of time-served. on.

Respectfully submitted on November 29, 2023.

*/s/ Michael Charles Benson*
Michael Charles Benson
Assistant Federal Public Defender

*/s/ C. Renée Manes*
C. Renée Manes
Assistant Federal Public Defender